ELECTRIC SHORT LINE TERMINAL COMPANY AND
ANOTHER v. CITY OF MINNEAPOLIS.[1]

April 9, 1954.

No. 36,126.

[1]Reported in 64 N. W. (2d) 149.

2

*John F. Bonner,* City Attorney, *Palmer B. Rasmusson,* Assistant City Attorney, for appellant.

*Grant L. Martin, Charles F. Noonan, Dorsey, Colman, Barker, Scott & Barber,* and *Rolf O. Slen,* for respondents.

Matson, Justice.

Defendant city appeals from an order striking from its answer a paragraph alleging as a complete defense that plaintiffs' exclusive remedy for the recovery of damages from a change of street grade is provided by the city charter.

On March 31, 1950, the Minneapolis city council, acting upon the detailed report and specifications submitted by its committee on roads and bridges, adopted a resolution changing the grade of that portion of Seventh street north—inclusive of the intersection with Third avenue north—which constitutes the east approach to the Seventh street north bridge which was then to be reconstructed. On April 4, 1950, both the committee report and the resolution were published in a weekly newspaper, Finance & Commerce, the official newspaper designated for the publication of all council proceedings as required by the city charter.

Plaintiffs' property abuts upon both Seventh street north and Third avenue north which intersect each other at right angles. The change in grade not only lengthened the east approach to the bridge but substantially raised the street grade opposite plaintiffs' property and wholly eliminated the street intersection which, at this point, had theretofore provided access to plaintiffs' property via Third avenue north. In an ordinary action plaintiffs sued defendant city for damages caused to their property by the raising of the street grade and the elimination of the street intersection. Defendant interposed an answer setting forth as a complete defense that plaintiffs had failed to resort to the sole and exclusive remedy as provided by the city charter and therefore were forever barred from an independent action for damages.

The primary issue is whether the remedy provided by Minneapolis City Charter and Ordinances (Perm. ed.) c. 8, § 2, is the exclusive and only remedy available to abutting property owners who seek damages caused by a change of street grade.

Chapter 8, § 2, after first providing that the city council shall have power to establish the grade of any street or change the grade by two-thirds vote, further provides that:

"Whenever the grade of any street shall be established or changed by the City Council, the owner of abutting property may file with the City Clerk, within twenty days after said City Council *shall so vote* to establish or change the grade of any such street in front of any such abutting property, notice that he will claim damages by reason of such establishment or change of grade in front of his said abutting property, giving the description of the land * * *, and the amount of the alleged damages * * *, which notice shall be sworn to and shall be accompanied by the certificate of the Building Inspector of said city of the value in his judgment of such land and buildings, * * *." (Italics supplied.)

Chapter 8, § 2, further provides that, if the city council, by reason of the amount of damages claimed, deems it unwise to make such change of grade, then it may reconsider its vote therefor. If there is no reconsideration of such vote then such council appoints five commissioners to ascertain and award the amount of damages sustained by the property owners *who have filed notices within the 20-day period first mentioned.* Subject to certain intermediate provisions which need not here be considered, the damage awards made by the commissioners, when confirmed by the city council, are *final and conclusive* upon all interested parties. Clearly no claim for damages can be considered unless the property owner has filed a notice thereof within the initial 20-day period.

█ In 1896 Minn. Const. art. 1, § 13, was amended to prohibit not only the *taking* but also the *destroying* or *damaging* of private property for public use without just compensation. As amended the above section reads:

"Private property shall not be taken, *destroyed or damaged* for public use without just compensation therefor, first paid or secured." (Italics indicate new words added by 1896 amendment.)

Prior to the 1896 amendment damages caused to abutting property owners by an establishment or a change of the grade of a street were not compensable as a constitutional right[2] on the theory that per-

---

[2]Lee v. City of Minneapolis, 22 Minn. 13; Alden v. City of Minneapolis, 24 Minn. 254; O'Brien v. City of St. Paul, 25 Minn. 331; Henderson v. City

sons owning such abutting property were deemed to have acquired it subject to the reserved right of the authorities to make such improvements in the streets thereof as public interests may from time to time require, and that the injuries necessarily resulting therefrom were *damnum absque injuria.* See, Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L.R.A.(N.S.) 790. Since the adoption of the amendment, damages resulting from the establishment or the change of street grade have been held compensable.[3]

The right of just compensation given to owners of private property by Minn. Const. art. 1, § 13, as amended, is essentially the same in its nature whether the property is actually *taken,* or *destroyed* or *damaged* for a public use. We may therefore consider decisions made both before and after the 1896 amendment in ascertaining whether a given legislative remedy is the exclusive method available to a property owner in enforcing his constitutional right to be compensated for damages. With respect to a *taking* of private property this court in Langford v. County of Ramsey, 16 Minn. 333 at p. 338 (375 at p. 378) said:

"But the constitution contains no express provision as to the mode in which the compensation to be paid shall be determined. In the silence of the constitution upon this question, it is to be presumed that the framers of the constitution 'intended to leave that subject to the discretion of the legislature, to be regulated in such manner as might be prescribed by law.' "

of Minneapolis, 32 Minn. 319, 20 N. W. 322; Pye v. City of Mankato, 36 Minn. 373, 31 N. W. 863. See, Collins v. Village of Richfield, 238 Minn. 87, 55 N. W. (2d) 628.

[3]Dickerman v. City of Duluth, 88 Minn. 288, 92 N. W. 1119; Vanderburgh v. City of Minneapolis, 93 Minn. 81, 100 N. W. 668; Vanderburgh v. City of Minneapolis, 98 Minn. 329, 108 N. W. 480, 6 L.R.A.(N.S.) 741; Sallden v. City of Little Falls, 102 Minn. 358, 113 N. W. 884, 13 L.R.A.(N.S.) 790; Wallenberg v. City of Minneapolis, 111 Minn. 471, 127 N. W. 422, 856; Austin v. Village of Tonka Bay, 130 Minn. 359, 153 N. W. 738; Maguire v. Village of Crosby, 178 Minn. 144, 226 N. W. 398. See, Collins v. Village of Richfield, *supra.*

It is generally recognized that, where private property is damaged as a consequence of a lawful public improvement, and a right to recover such consequential damages is guaranteed by a constitutional provision which is silent as to the mode in which such damages are to be ascertained, the legislature may prescribe and regulate the remedy; and therefore if a statute, pursuant to which the property is appropriated to a public use, prescribes a definite and adequate remedy for the enforcement of the constitutional right to consequential damages, the statutory remedy is exclusive[4] in the absence of an expressed legislative intent to the contrary.[5] The same principle applies not only where the constitutional right to recover consequential damages is implemented by a statute but also where the remedy is established by the provisions of a city charter which has been authorized by the legislature.[6]

■ We come to the basic issue of whether c. 8, § 2, provides an adequate remedy for the recovery of consequential damages. Long prior to the 1896 amendment the decisions of this court recognized that any mode of determining and awarding compensation for the taking of private property for public use—whether established by direct legislative act or by the provisions of a municipal charter— is valid and adequate if it provides: (1) An impartial but not necessarily a judicial tribunal, (2) for the giving of proper notice to persons affected by the proceedings, and (3) an opportunity to

[4]Collins v. Village of Richfield, *supra,* is not to the contrary. The holding of the Collins case is simply that the property owner may bring an action for consequential damages where a municipality has ordered a change of grade without instituting condemnation proceedings.

[5]Stevens v. Proprietors of Middlesex Canal, 12 Mass. 466; Bigelow v. Union Freight R. Co. 137 Mass. 478; City of Lincoln v. Grant, 38 Neb. 369, 56 N. W. 995; 18 Am. Jur., Eminent Domain, § 390; see, 6 Nichols, Eminent Domain (3 ed.) § 24.2; Teick v. Commrs. of Carver County, 11 Minn. 201 (292) ; Hirsch v. City of St. Paul, 117 Minn. 476, 136 N. W. 269; cf. Abel v. City of Minneapolis, 68 Minn. 89, 70 N. W. 851; 11 McQuillin, Municipal Corporations (3 ed.) § 32.132.

[6]See, State ex rel. Simpson v. Rapp, 39 Minn. 65, 38 N. W. 926; City of St. Paul v. Nickl, 42 Minn. 262, 44 N. W. 59.

be heard,[7] and (4) if it affords a right of review by a court of general jurisdiction.[8]

■ Does the remedy provided by c. 8, § 2, contain the essential element of *adequate* notice to the abutting property owners? If adequate notice is to be found therein it must be on the theory that a legislative act which directly exercises the power of eminent domain by appropriating private property to a future public use, is a public act of which, like other legislative enactments of general application, every citizen is presumed to have knowledge and therefore notice. This theory was adopted in the majority opinion of State v. Messenger, *supra*, and was confirmed in State v. Bruggerman, 31 Minn. 493, 18 N. W. 454. In the Messenger case, which upheld a special legislative enactment appropriating private property to a public use and subjecting the owner to a forfeiture of his constitutional right to compensation unless a claim for damages was made within 60 days of the passage of the act, Mr. Chief Justice Gilfillan dissented, pointing out that it is fallacious to hold that the presumption that everybody knows the law supplies adequate constructive notice since the property owner would reasonably learn of the enactment only by sheer chance. The presumption that every citizen knows the law is nothing more than a restatement of the principle that ignorance of law is no excuse for noncompliance. Clearly such presumption is an illusory substitute for the notice required in eminent domain proceedings to apprise an owner of the invisible appropriation of his property to a future public use so that he may fairly be forewarned that he will lose his constitutional right to compensation if he fails to act within a prescribed period.

The unsoundness of this theory becomes strikingly apparent as it is exemplified in the instant case. Chapter 8, § 2, by explicit language purports to terminate completely an abutting owner's right to compensation unless such owner within 20 days after the city council *has voted* (not 20 days after the first publication of the

[7]Langford v. County of Ramsey, 16 Minn. 333 (375) ; State v. Messenger, 27 Minn. 119, 6 N. W. 457; State v. Bruggerman, 31 Minn. 493, 18 N. W. 454; City of St. Paul v. Nickl, 42 Minn. 262, 44 N. W. 59.

[8]State v. Messenger, *supra;* City of St. Paul v. Nickl, *supra.*

resolution) to change the street grade actually files a notice of claim with the city clerk. A city council vote can only be effective as notice to the average property owner on the unrealistic assumption that by some process of intuition he is promptly informed when the council takes action which affects his particular property. As a prerequisite to the commencement of the 20-day limitation period, c. 8, § 2, contains no provision whatever for constructive notice to the property owner by publication or by the posting of any appropriate notice. All provisions therein for constructive notice by publication relate to hearings held subsequent to the expiration of the time for filing claims.

We have not overlooked another and separate provision of the city charter, c. 4, § 9, which provides that no ordinance or resolution shall be enforced until it has been published in the official paper of the city. The requirements of adequate constructive notice are not supplied by this provision for at least two reasons. In the first place, c. 8, § 2, explicitly states that the 20-day notice-of-claims period shall run from the time the council *votes* for the resolution and not from the time the resolution becomes effective by publication. In the second place, the provisions for the publication of ordinances and resolutions specifies no time limit within which the publication is to take place. As applied to c. 8, § 2, the resolution changing the street grade conceivably might not be published until the 20-day period had expired. In the instant case, however, the resolution adopted on March 31 was actually published on April 4, but such deferred publication left only a part of the period to run. A statutory or city charter remedy for the enforcement of a constitutional right to compensation for the taking or damaging of private property for a public use cannot be deemed adequate and therefore an exclusive remedy unless the prescribed period of limitation, during which the property owner must assert his right to compensation, dates from the time of actual service of notice or from the time when constructive service—whether it be by publication, posting, or otherwise—becomes effective.

■ In recognizing that the mere enactment of a statute appropriating private property is not of itself such constructive notice as

will start the running of a statute-of-limitations period during which the property owner must assert his right to compensation, Mr. Justice Cardozo said:

"* * * Before the citizen's right to compensation can be cut off by such a statute of limitation, notice of the event on which the right depends must be brought home to him by the State. He cannot be charged with the duty of hunting out the facts for himself. The State is appropriating his property by proceedings *in invitum,* and it cannot shift upon him the burden of ascertaining that the proceedings are in motion. It must give him notice reasonably adapted to bring their pendency to his attention." Matter of City of N. Y. (Grand Boulevard) 212 N. Y. 538, 544, 106 N. E. 631, 632.[9]

■ It is with no little reluctance that we reject the theory that adequate notice of an appropriation of private property to public use is supplied by the presumption that every citizen knows the law. The rule has been of long standing in this jurisdiction. It also survives in certain other jurisdictions. Although such rule may have had some justification in an earlier pioneer era when every act of a legislature or of a city council was community news, that justification no longer exists in either urban or rural communities. Clearly, legislative acts which affect only a very limited number of property owners, especially in a populous community, have no such general news value as to provide a valid basis for a presumption that such property owners, by a mere passage of the act, become automatically possessed of such knowledge as will reasonably forewarn them that they must act with dispatch to protect their right to compensation for an appropriation of their property to a public use which has not manifested itself by any physical improvement and exists only in the realm of law. We therefore expressly overrule State v. Messenger, 27 Minn. 119, 6 N. W. 457, and State v. Bruggerman, 31 Minn. 493, 18 N. W. 454, and similar cases insofar as they establish the

---

[9]Greene County v. Hayden, 175 Ark. 1067, 1 S. W. (2d) 803, is in accord. See, Bragg v. Weaver, 251 U. S. 57, 40 S. Ct. 62, 64 L. ed. 135; Parks v. Board of Co. Commrs. 186 N. C. 490, 120 S. E. 46; Sheridan County v. Hand, 114 Neb. 813, 210 N. W. 273; 1 Merrill, Notice, § 514; 1 Elliott, Roads and Streets (4 ed.) § 224.

10

doctrine that adequate notice in an eminent domain proceeding is supplied by the theory that every citizen is presumed to know the law. The language used in this paragraph has no application whatsoever to proceedings subsequent to, or to appeals from, the initial award in eminent domain proceedings.

The order of the trial court is affirmed.

Affirmed.