#26252, #26265-aff in pt, rev in pt & rem-DG

**2013 S.D. 13**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

CONRAD D. RUPERT and
REONE A. RUPERT,                                          Plaintiffs and Appellees,

v.

CITY OF RAPID CITY,
SOUTH DAKOTA,                                            Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JANINE KERN
Judge

* * * *

TRAVIS B. JONES
MICHAEL S. BEARDSLEY of
Beardsley, Jensen, and Von Wald, LLC
Rapid City, South Dakota                       Attorneys for plaintiffs
                                               and appellees.


TIMOTHY J. BECKER of
Banks, Johnson, Kappelman
  & Becker, PLLC
Rapid City, South Dakota                       Attorneys for defendant
                                               and appellant.

* * * *

ARGUED NOVEMBER 6, 2012

OPINION FILED **01/30/13**

GILBERTSON, Chief Justice

[¶1.] Conrad and Reone Rupert (the Ruperts) owned land in Rapid City, South Dakota. During the winter, the City of Rapid City (the City) applied a deicer to the streets adjacent to the Ruperts' property. In 2009, the Ruperts sued the City, claiming that the deicer ran onto their property and destroyed several pine trees. The trial court granted the Ruperts' motion for summary judgment on their inverse condemnation claim, and proceeded to trial to have a jury determine the amount of "just compensation" the Ruperts were entitled to. The jury awarded the Ruperts $126,530 to compensate them for the damage to their property. The City appeals several of the trial court's decisions. In addition, the Ruperts filed a notice of review. We affirm in part, reverse in part, and remand.

## FACTS

[¶2.] On April 2, 2009, the Ruperts filed a complaint against the City. The Ruperts alleged that the deicer the City applied to the streets adjacent to their property during the winter had run off one of the streets and onto their property, killing 42 pine trees and other vegetation on their property. The Ruperts claimed that the damage to their property began no later than the winter of 2004–2005. Further, the Ruperts indicated that they repeatedly complained to the City about the damage being done to their trees, but the City failed to address their concerns. The Ruperts asserted the City was liable for the damage to the trees and vegetation under theories of inverse condemnation, negligence, and trespass.

[¶3.] On September 10, 2009, the City filed a motion for partial summary judgment as to the Ruperts' negligence and trespass claims. The City asserted it

was entitled to summary judgment on these claims based on sovereign immunity.[1]

The trial court denied the City's partial motion for summary judgment on January

10, 2010. The City filed a second motion for summary judgment on January 5,

2011, claiming that it was entitled to judgment as a matter of law on all three of the

Ruperts' causes of action. On February 22, 2011, the trial court granted the City's

second motion for summary judgment on the Ruperts' negligence and trespass

claims, and denied the City's second motion for summary judgment on the Ruperts'

inverse condemnation claim.

[¶4.]        On September 20, 2011, the trial court held a hearing to address

various motions filed by the parties. One of the more significant issues the trial

court considered was the measure of damages that would be used for the Ruperts'

inverse condemnation claim. The City argued that the proper measure of damages

for inverse condemnation was the difference between the fair market value of the

Ruperts' property before and after it was damaged. Alternatively, the Ruperts

argued that the proper measure of damages in this case was the clean-up and

replacement costs of the trees along with damages attributable to loss of shade,

---

1.      The City's liability insurer investigated the Ruperts' claim but denied
        coverage based on a pollution exclusion. The City's policy with American
        International Specialty Lines Insurance Company (AIG), which was the
        City's pollution insurer, had a $100,000 deductible and a $3,000,000 limit.
        AIG determined that it would provide the City with a defense subject to its
        reservation of rights, because there might not be coverage for the Ruperts'
        claims under the policy. In its motion for partial summary judgment, the
        City claimed that under SDCL 21-32A-1, it was protected by sovereign
        immunity against the Ruperts' negligence and trespass claims to the extent it
        did not have insurance coverage (which it claimed was any amount under
        $100,000 and over $3,000,000). Further, the City argued that if its pollution
        insurer would not cover the Ruperts' negligence and trespass claims, the
        Ruperts' tort claims would be completely barred by sovereign immunity.

ornamental value, aesthetic value, and loss of enjoyment of the trees. Ultimately, the trial court rejected the City's arguments and concluded that "just compensation" would be calculated in accordance with the measure of damages method proposed by the Ruperts. Based on this ruling, the trial court determined that all evidence regarding the fair market value of the Ruperts' property would be excluded from trial.

[¶5.] On September 26, 2011, the Ruperts moved for partial summary judgment on their inverse condemnation claim. The trial court granted the Ruperts' motion for partial summary judgment on October 17, 2011. The trial court issued findings of fact and conclusions of law along with its order granting summary judgment on the Ruperts' inverse condemnation claim. The trial court found that the Ruperts established each element of inverse condemnation, and it made specific findings regarding some of those elements.

[¶6.] Upon granting summary judgment in favor of the Ruperts on their inverse condemnation claim, the trial court concluded that the only remaining issue for the jury to determine was the amount of damages suffered by the Ruperts. The case proceeded to trial on October 18, 2011. On October 19, 2011, the jury awarded the Ruperts "just compensation" of $126,530 to compensate them for the damages to their property caused by the City's use of the deicer. Following trial, the Ruperts moved for attorney fees pursuant to SDCL 21-35-23. The trial court denied the Ruperts' motion for attorney fees, finding that SDCL 21-35-23 did not expressly authorize the trial court to award attorney fees in inverse condemnation cases. Thus, the trial court concluded that SDCL 21-35-23 was not applicable in this case.

The City appeals, raising several issues. The Ruperts filed a notice of review, seeking review of two additional issues.

## ANALYSIS AND DECISION

[¶7.]    **1.    Whether the trial court erred in granting summary judgment in favor of the Ruperts on their inverse condemnation claim based on its determination that the Ruperts submitted sufficient evidence to prove that the injury to their property was "a peculiar injury and not of a kind suffered by the general public as a whole" and that the City engaged in "direct and substantial action or abuse."**

[¶8.]    "This Court reviews a grant of summary judgment 'to determine whether the moving party has demonstrated the absence of any genuine issue of material fact and entitlement to judgment on the merits as a matter of law.'" *Hall v. S.D. Dep't of Transp.*, 2011 S.D. 70, ¶ 9, 806 N.W.2d 217, 221. A trial court's grant of summary judgment will be affirmed "if there is any legal basis to support its ruling." *Krier v. Dell Rapids Twp.*, 2006 S.D. 10, ¶ 12, 709 N.W.2d 841, 845. Further, an alleged violation of a constitutional right is "an issue of law to be reviewed under the de novo standard of review." *Benson v. State*, 2006 S.D. 8, ¶ 39, 710 N.W.2d 131, 145.

[¶9.]    The United States Constitution provides that private property shall not "be taken for public use, without just compensation." U.S. Const. amend. V. Article VI, § 13 of the South Dakota Constitution provides that "[p]rivate property shall not be taken for public use, or damaged, without just compensation . . . ."[2]

---

2.    Article XVII, § 18 of the South Dakota Constitution specifically deals with municipal corporations and the power of eminent domain. It provides in part:

(continued . . .)

This Court has previously determined that South Dakota's Constitution provides greater protection for its citizens than the United States Constitution because "our Constitution requires that the government compensate a property owner not only when a taking has occurred, but also when private property has been 'damaged.'" *Krier*, 2006 S.D. 10, ¶ 21, 709 N.W.2d at 846. Thus, "where no part of an owner's land is taken[,] but because of the taking and use of other property so located as to cause damage to an owner's land, such damage is compensable . . . " *Id.* ¶ 23, 709 N.W.2d at 847 (quoting *State Highway Comm'n v. Bloom*, 77 S.D. 452, 461, 93 N.W.2d 572, 577 (1958)).[3] "The underlying intent of the [damages] clause is to ensure that individuals are not unfairly burdened by disproportionately bearing the cost of projects intended to benefit the public generally." *Hall*, 2011 S.D. 70, ¶ 37, 806 N.W.2d at 230 (alteration in original) (quoting *DeLisio v. Alaska Super. Ct.*, 740 P.2d 437, 439 (Alaska 1987)). "The tendency under our system is too often to

_____

(. . . continued)

> Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed, by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction.

It is an open question whether the destruction of the trees herein was for "construction or enlargement" of the City's works, highways, or improvements. As neither party raised the application of this constitutional provision, we leave its construction for another day.

3. The inclusion of the term "damaged" was not inadvertent. It was a hotly contested topic during the 1885 Constitutional Convention, which was used as a basis for our Constitution when it was enacted in 1889. 1 *1885 Dakota Constitutional Convention*, 332-338 (Doane Robinson ed., Huronite Printing Co. 1907).

sacrifice the individual to the community; and it seems very difficult in reason to show why the State should not pay for property which it destroys or impairs the value, as well as for what it physically takes." *Id.* (quoting *Bakke v. State*, 744 P.2d 655, 657 (Alaska 1987)).

[¶10.] In our seminal case of *Searle v. City of Lead*, we held that an action by a landowner for inverse condemnation[4] is maintainable where a governmental entity causes an invasion of the land by "water, earth, sand, or other matter or artificial structures placed upon it, so as effectually to destroy or impair its usefulness . . . [,]" but that it is not required "that the damage shall be caused by a trespass or an actual physical invasion of the owner's real estate[.]" 10 S.D. 312, 73 N.W. 101, 103, 104 (1897). However, in *Krier v. Dell Rapids Township,* this Court recognized that in order for a plaintiff to recover under the consequential damages rule, he or she must prove that "the consequential injury is peculiar to [their] land and not of a kind suffered by the public as a whole." 2006 S.D. 10, ¶ 26, 709 N.W.2d at 847-48 (alteration in original) (quoting *Bloom*, 77 S.D. at 461, 93 N.W.2d at 577). Further, the plaintiff's injury "must be different in kind and not merely in degree from that experienced by the general public." *Id.* ¶ 26, 709 N.W.2d at 848 (quoting *Hurley v. State*, 82 S.D. 156, 163, 143 N.W.2d 722, 726 (1966)). Nevertheless, there

---

4. Condemnation proceedings are distinct from inverse condemnation proceedings in that in condemnation proceedings, a governmental entity formally commences proceedings to condemn property, whereas in inverse condemnation proceedings, a landowner commences proceedings to recover "just compensation" for a taking or damaging of his or her property when formal condemnation proceedings have not been instituted. *See Searle*, 10 S.D. 312, 73 N.W. 101; *United States v. Clarke*, 445 U.S. 253, 255-58, 100 S. Ct. 1127, 1129-31, 63 L. Ed. 2d 373 (1980); 2A Nichols on Eminent Domain § 6.14 (rev. 3d ed. 2002).

is "no magic formula [that] enables a court to judge, in every case, whether a given government interference with property is a taking." *Ark. Game & Fish Comm'n v. United States*, ___ U.S. ___, 133 S. Ct. 511, 518, ___ L. Ed. 2d ___ (2012). Instead, the viability of a takings claim is dependent upon "situation-specific factual inquiries." *Id.*

[¶11.]    The City argues that the trial court erred in granting summary judgment in favor of the Ruperts on their inverse condemnation claim because the Ruperts failed to place sufficient evidence in the record to show that they could prove each element of their claim. Specifically, the City argues that the Ruperts failed to establish two of the elements of inverse condemnation. First, the City argues that the Ruperts could not show that the City engaged in "direct and substantial action or abuse." The City bases its assertion that the Ruperts are required to prove the City engaged in "direct and substantial action or abuse" in order to establish their claim for inverse condemnation on a statement made by this Court in *City of Brookings v. Mills*, 412 N.W.2d 497, 501 (S.D. 1987).[5] However, the City has taken this statement out of context. This Court's analysis in *Mills* regarding the elements of a cause of action for inverse condemnation does not apply in this case.

[¶12.]    In *Mills*, the plaintiff owned land that was adjacent to the City of Brookings' airport. 412 N.W.2d at 498. The plaintiff intended to develop the land, but in 1977, he learned that the City of Brookings had plans to expand the airport,

---

5.    In *Mills*, this Court stated that "[t]hese cases make it clear that the plaintiff in an inverse condemnation action must prove direct and substantial action by the government." 412 N.W.2d at 501.

and that the City of Brookings intended to acquire the plaintiff's property as part of the expansion. *Id.* As a result, the plaintiff did not develop the property as he had intended. *Id.* In 1981, the City of Brookings initiated a formal condemnation proceeding to acquire the plaintiff's land. *Id.* at 499. The plaintiff sued the City of Brookings, alleging a "de facto taking" of his property because the City of Brookings had effectively deprived the plaintiff of the use of his property for the four and one-half year period prior to the formal condemnation proceeding. *Id.*

[¶13.]      In *Mills*, this Court looked to the decisions of Michigan and Pennsylvania courts to determine the elements of a "de facto taking" cause of action, because the concept of a "de facto taking" was an issue of first impression in South Dakota. *Id.* at 500. In addition to proving "direct and substantial action by the government," this Court determined the plaintiff was also required to prove other elements, such as that "a formal condemnation [proceeding] was inevitable" or, if condemnation was not inevitable, that exceptional circumstances existed "which deprived [the plaintiff] of the beneficial use and enjoyment of his property." *Id.* at 501. Further, the cases this Court analyzed in determining that proof of "direct and substantial action" by the governmental entity was required were "de facto takings" cases in which the property owners were aware that the governmental entity intended to take their property but condemnation of their property was delayed. *Id.* at 500-01. Examples of "direct and substantial action by the government" in these cases included the governmental entity sending letters to tenants and occupants of properties encouraging them to move out, reducing city garbage, police, and street repair and cleaning services, deliberately filing a lis

pendens, publishing threats of condemnation, refusing to issue building permits for improvements, engaging in intense building violation inspections, etc. *Id.*

[¶14.]    A review of *Mills* establishes that the statement this Court made about requiring proof of a "direct and substantial action by the government" in inverse condemnation cases was limited to causes of action for a "de facto taking" where the governmental entity delayed condemning the property. "In this regard, we recall Chief Justice Marshall's sage observation that 'general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.'" *Ark. Game & Fish Comm'n*, ___ U.S. ___, 133 S. Ct. at 520, ___ L. Ed. 2d ___ (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264, 399, 5 L. Ed. 257 (1821)). This case does not involve a "de facto taking" claim by a landowner stemming from the government's delay in condemning property. Instead, the Ruperts' inverse condemnation claim is based upon the City's destruction of numerous trees on their property.

[¶15.]    Regardless, the City's use of the deicer, which killed 42 trees on the Ruperts' property, constitutes a "direct and substantial action by the government." The damage came from nowhere else. We have recognized that destruction of trees by a governmental entity is a compensable loss to a landowner. *See State Highway Comm'n v. Bredvik*, 268 N.W.2d 144 (S.D. 1978); *Parsons v. City of Sioux Falls*, 65 S.D. 145, 272 N.W. 288 (1937). Thus, even if proof of "direct and substantial action by the government" were an element of the Ruperts' claim, it was established.

[¶16.]     Next, the City argues that the Ruperts failed to prove that the injury to their property "was a peculiar injury and not of a kind suffered by the general public as a whole."[6] The record demonstrates that the evidence was sufficient to support the trial court's determination that the Ruperts had submitted enough evidence to prove that the damage to their property was unique. For example, the undisputed evidence established that the City's use of the deicer killed 42 mature pine trees on the Ruperts' property. Additionally, the Site Evaluation Report prepared by Dr. Cregg (an expert who visited and evaluated the Ruperts' property) indicated that damage to the pine trees was confined to the Ruperts' property and that similar-aged trees on the opposite side of the road were in good condition. Further, the report indicated that the soil and foliar levels of sodium were significantly higher on the Ruperts' property than in surrounding areas (which was the primary cause of the tree death).

[¶17.]     Also, the trial court noted that only two other complaints regarding property damage caused by the City's use of the deicer had been filed in the past 10 years, and those claims were unsubstantiated. Finally, the City failed to provide any evidence to establish that the public as a whole suffered the same kind of property damage as the Ruperts. Specifically, when the trial court asked the City

---

6.     We do not analyze whether the City's actions in this case specifically constitute a "taking" or a "damaging." In this case, both the parties and the trial court analyzed the case as though there was no taking or permanent occupation of the Ruperts' property, but that the Ruperts suffered "consequential damages" as a result of the City's use of the deicer. We assume without deciding that this is a case involving "consequential damages" as opposed to a taking, and proceed on that basis.

whether it had even a "shred of evidence" to support its claim that the general public had suffered similar damages as a result of the City's use of the deicer, the City's response was "[n]o. . . . " Therefore, the trial court did not err in determining the Ruperts submitted sufficient evidence to prove that the damage to their property was peculiar and that the damage to their property was different in kind rather than degree. As a result, the trial court did not err in granting summary judgment in favor of the Ruperts on their inverse condemnation claim.

[¶18.] **2.** **Whether the trial court erred in determining that the proper measure of damages in this case was the clean-up and replacement costs of the trees along with damages attributable to loss of shade, ornamental value, aesthetic value, and loss of enjoyment of the trees.**

[¶19.] The City argues the trial court committed reversible error in rejecting its claim that the proper measure of damages in this case was the diminution in market value and instead ruling that the proper measure of damages was the clean-up and replacement costs of the trees along with damages attributable to loss of shade, ornamental value, aesthetic value, and loss of enjoyment of the trees. This constitutes a question of law. *See Lamar Adver. of S.D., Inc. v. Heavy Constructors, Inc.*, 2008 S.D. 10, ¶ 13, 745 N.W.2d 371, 375. A trial court's "[c]onclusions of law are reviewed under a de novo standard of review and no deference is given to the trial court's conclusions of law." *Id.* (quoting *Melstad v. Kovac*, 2006 S.D. 92, ¶ 6, 723 N.W.2d 699, 702).

[¶20.] We have traditionally held that the proper measure of damages in condemnation cases involving a partial taking or damaging of property "is the difference between the fair market value of the unit before the taking and the fair market value of what remains after the taking." *See, e.g., Corson Vill. Sanitary*

*Dist. v. Strozdas*, 539 N.W.2d 876, 879 (S.D. 1995) (quoting *City of Sioux Falls v. Kelley*, 513 N.W.2d 97, 103 (S.D. 1994)). The fair market value and diminution in market value measures of damages are generally used in condemnation cases despite a party's request for application of an alternative measure of damages. *See State Highway Comm'n v. Am. Mem'l Parks, Inc.*, 82 S.D. 231, 144 N.W.2d 25 (1966) (rejecting measure of damages that determined "just compensation" based on the mathematical aggregate of prices of individual cemetery lots, and instead determining "just compensation" based on the fair market value of the tract of land as a whole); *Bredvik*, 268 N.W.2d at 146 (concluding that when there was an ascertainable market value, there was no reason to depart from the general rule, even if the land had value that was unique to its blind owner). *See also Walkenhorst v. State Dep't of Rds.*, 573 N.W.2d 474, 482-83 (Neb. 1998) (agreeing with statement of Iowa Supreme Court in *Laube v. Estate of Thomas*, 376 N.W.2d 108, 109 (Iowa 1985)), and indicating that where trees are "put to a special purpose, such as for windbreaks, shade or ornamental use, the measure of the value of the condemned land is usually the difference in value of the realty before and after the destruction of the trees"); *Sanitary & Improvement Dist. No. 384 v. Bruhns Packing Co.*, 609 N.W.2d 679, 686 (Neb. 2000) (determining that a landowner who had suffered a temporary loss of his property, which included the destruction of his trees, could not collect damages for both the diminution in market value and the cost of restoration of the trees). "Fair market value" is "the highest price for which property considered at its best and most profitable use can be sold in the open market by a willing seller to a willing buyer[,] neither acting under compulsion and

both exercising reasonable judgment." *Am. Mem'l Parks, Inc.*, 82 S.D. at 236, 144 N.W.2d at 27-28 (citing *City of Huron v. Jelgerhuis*, 77 S.D. 600, 605, 97 N.W.2d 314, 317 (1959)).

[¶21.] The diminution in value measure of damages, which has been applied in condemnation cases involving a partial taking or damaging of property, has also been applied in inverse condemnation cases. *See Hurley v. State (Hurley I)*, 81 S.D. 318, 319-21, 134 N.W.2d 782, 782-83 (1965) (stating that in an inverse condemnation action to recover damages when construction of road prevented access to plaintiff's lot, the general rule for measure of damages was "the difference in value of the tract before and after the portion is taken"); *Heezen v. Aurora Cnty.*, 83 S.D. 198, 206-07, 157 N.W.2d 26, 31 (1968) (concluding that in an action by plaintiff to recover for damage to land due to flooding caused by the county, the proper measure of damages for permanent damage to the property was "the difference in market value of [the] farms before and after the flooding"); *Parsons*, 65 S.D. 145, 272 N.W. at 292 (stating that measure of damages in suit by plaintiff to recover for permanent damage to property caused by untreated sewage the City of Sioux Falls discharged into the Big Sioux river was "the difference in the market value before and after the injury. . ."); *See also* 2A Nichols, *supra* ¶ 10 n.4, § 6.14[3] (stating that "[a]s in virtually all eminent domain proceedings, the measure of damages in most inverse condemnation cases is often expressed in terms of the diminution in value of the impacted property").

[¶22.] In this case, the trial court's rationale for using the clean-up and replacement costs of the trees along with damages attributable to loss of shade,

ornamental value, aesthetic value, and loss of enjoyment of the trees as the measure of damages, as opposed to the diminution in value measure of damages, was based on its determination that the damage to the Ruperts' trees was temporary rather than permanent. In making this determination, the trial court found that the trees could be repaired or restored. In this case, we conclude the trial court's pre-trial determination was erroneous.

[¶23.]     With regard to damage to property, this Court has stated:

> Damage to real estate has been held to be permanent when it is 'of such a character and existing under such circumstances that it will be presumed to continue indefinitely,' when it is irremediable, when it 'inconveniences the owner in its right and accustomed use, and requires time and expense to restore the land to its former condition,' [or] when it 'will remain even though the cause has been abated,' . . . .

*Gross v. Conn. Mut. Life Ins. Co.*, 361 N.W.2d 259, 272 (S.D. 1985) (internal citations omitted). In specifically considering the permanency of the damage to the Ruperts' trees, it is undisputed that the City's use of the deicer *killed* 42 trees. Dead trees cannot be repaired or restored to their original condition in the immediate future. However, the damage to the Ruperts' trees is not the only factor that affects the determination of whether the damage to the Ruperts' property was permanent as opposed to temporary. In this case, other factors should be considered in determining whether the damage to the Ruperts' property caused by the deicer runoff was temporary or permanent.

[¶24.]     For example, there is no indication that the City plans to stop using the deicer on the streets during the winter. In fact, during oral argument, counsel for the City indicated that the City intends to continue its use of the deicer. Thus,

even if the trees are replaced, the deicer will presumably kill the new trees. On the other hand, despite the City's plan to continue using the deicer, during oral arguments the parties acknowledged that the problems caused by the deicer runoff could be alleviated through the construction of a curb and gutter along the road adjacent to the Ruperts' property, because the curb and gutter would prevent the deicer from accessing the Ruperts' property. However, there is no indication that the Ruperts themselves have acquired permits and have paid to have a curb and gutter installed, or that they have started the process they would need to go through to have the City install a curb and gutter along the road adjacent to their property. In addition, even if the Ruperts did complete the process to request that the City install a curb and gutter, there is no guarantee that their request would be approved. Finally, the parties did not present any evidence regarding whether the deicer's effects on the soil will be long-term. If the soil has sustained long-term damage as a result of the City's application of the deicer, replacement of the trees and installation of a curb and gutter may not resolve the problem because the soil may be too contaminated to support new trees.

[¶25.]    Overall, the record does not reflect that the trial court adequately considered these various factors when it determined that the damage to the Ruperts' property was temporary. Further, in this case, we conclude that the trial court's pre-trial determination that the damaging of the Ruperts' property was temporary was improper. Instead, the question of whether the damage to the Ruperts' property was temporary or permanent is a question of fact that should have been decided by the fact finder.

[¶26.]      Next, as to the measure of damages to be applied in this case, if the jury finds that the damage to the Ruperts' property is permanent, the proper measure of damages is the diminution in fair market value of the property. When the diminution in market value measure of damages is applied, we have held that "the landowner is entitled to have the jury informed as to all those facts which legitimately bear upon the market value of the [land] before and after the taking and those factors which would ordinarily influence a prospective purchaser in negotiating for the property." *State Highway Comm'n v. Hayes Estate*, 82 S.D. 27, 34, 140 N.W.2d 680, 684 (1966). *See also Schuler v. Bd. of Sup'rs*, 12 S.D. 460, 81 N.W. 890, 893 (1900).

[¶27.]      If instead the jury finds that the damage to the Ruperts' property is temporary, the proper measure of damages in this case is "the reasonable cost of restoration, unless such cost is greater than the diminution in value of the . . . premises, in which case the difference in market value before and after the injury would be the proper measure of damages."[7] *Ward v. LaCreek Elec. Ass'n*, 83 S.D. 584, 593, 163 N.W.2d 344, 349 (1968) (quoting *Reed v. Consol. Feldspar Corp.*, 71

---

7.      Cases relied upon by the Ruperts, such as *Wallahan v. Black Hills Electric Cooperative*, 523 N.W.2d 417 (S.D. 1994), and *Bailey v. Chicago, M. & St. P. Ry. Co.*, 3 S.D. 531, 54 N.W. 596 (1893), are not applicable as they do not deal with inverse condemnation claims against governmental entities, and the measures of damages used in these cases are not consistent with eminent domain jurisprudence. Although *Ward v. LaCreek Electric Ass'n*, 83 S.D. 584, 163 N.W.2d 344 (1968), is not an eminent domain case, its treatment of damages is consistent with eminent domain jurisprudence. *See Sacramento & San Joaquin Drainage Dist. v. Goehring*, 91 Cal. Rptr. 375, 380 (Cal. Ct. App. 1970) (quoting 4 Nichols on Eminent Domain § 12.5 (3d ed.)); *Akers v. City of Oak Grove*, 246 S.W.3d 916, 920 (Mo. 2008).

S.D. 189, 196, 23 N.W.2d 154, 157 (1946)). Thus, the restoration costs measure of damages is not without limits. It is not designed to create a windfall to the landowner. The landowner may generally only recover restoration costs if that amount does not exceed the diminution in value of the property. This Court has previously stated that damages in an eminent domain case are not "'manna from heaven'; [they] must be based on actual loss of value." *Lawrence Cnty. v. Miller*, 2010 S.D. 60, ¶ 21, 786 N.W.2d 360, 369 (quoting *Basin Elec. Power Coop., Inc. v. Cutler*, 88 S.D. 214, 220, 217 N.W.2d 798, 801 (1974)).

[¶28.]     In this case, the jury awarded the Ruperts $126,530 based upon the measure of damages adopted by the trial court. The City was prepared to present testimony by an expert which would have shown that the total value of the Ruperts' entire property prior to the damage was $178,500, and that the value of the home the Ruperts had on their property was $71,300 in and of itself. However, the trial court excluded this evidence. The trial court erred in not allowing this evidence to be presented to the jury because this evidence is relevant to a determination of the diminution in market value of the property. In this case, the diminution in market value measure of damages may end up being the proper measure of damages regardless of whether the damage to the Ruperts' property is found to be temporary or permanent, because even if the jury finds that the damage is temporary, it cannot award restoration costs if these costs exceed the diminution in value of the property. Therefore, on remand, evidence related to the diminution in fair market value of the Ruperts' property should be admitted.

[¶29.] As previously mentioned, the ultimate determination of whether government conduct constitutes a taking or damaging is a question of law for the court. *See Benson*, 2006 S.D. 8, ¶ 39, 710 N.W.2d at 145. However, the jury is charged with determining questions of fact pertinent to an inverse condemnation claim, such as whether the damage to the Ruperts' property is temporary or permanent. Thus, in this case it was improper for the trial court to decide the measure of damages issue by summary judgment. As a result, we reverse and remand for re-trial regarding the amount of "just compensation" the Ruperts are entitled to recover for the City's damaging of their property.

[¶30.] **3.** **Whether the trial court erred in denying the Ruperts' request for attorney fees.**

[¶31.] On appeal, the Ruperts seek review of the trial court's denial of their request for attorney fees. Following the jury's verdict in favor of the Ruperts, the Ruperts filed a motion for attorney fees pursuant to SDCL 21-35-23. The trial court found that the Ruperts had satisfied the conditions of SDCL 21-35-23. However, the trial court determined that the Ruperts were not entitled to recover attorney fees under SDCL 21-35-23 because SDCL 21-35-23 did not expressly apply to inverse condemnation cases.

[¶32.] "[T]he construction of a statute and its application to particular facts present a question of law, reviewed de novo." *Bosse v. Quam*, 537 N.W.2d 8, 10 (S.D. 1995) (citing *Schoenrock v. Tappe*, 419 N.W.2d 197, 200 (S.D. 1988)). For purposes of awarding attorney fees, South Dakota subscribes to the "American Rule." *Boland v. City of Rapid City*, 315 N.W.2d 496, 503 n.4 (S.D. 1982). Under the "American Rule," each party in an action bears its own attorney fees. *Toft v.*

*Toft*, 2006 S.D. 91, ¶ 17, 723 N.W.2d 546, 551 (citing *In re S.D. Microsoft Antitrust Litig.*, 2005 S.D. 113, ¶ 29, 707 N.W.2d 85, 98). However, there are two exceptions to this rule. *Id.* First, attorney fees may be awarded "when the parties enter into an agreement entitling the prevailing party to an award of attorney's fees." *Id.* Alternatively, attorney fees may be awarded if "an award of attorney's fees is authorized by statute." *Id.* Further, in considering whether an award of attorney fees is authorized by statute, "[t]his Court has rigorously followed the rule that authority to assess attorney fees may not be implied, but must rest upon a clear legislative grant of power." *In re Estate of O'Keefe*, 1998 S.D. 92, ¶ 17, 583 N.W.2d 138, 142 (quoting *Schuldies v. Millar*, 1996 S.D. 120, ¶ 38, 555 N.W.2d 90, 100).

[¶33.]     Our analysis of the doctrine of sovereign immunity is consistent with the above. Abrogation of sovereign immunity by the Legislature must be express. *See In re Request for Op. of Sup. Ct. Relative to Constitutionality of SDCL 21-32-17*, 379 N.W.2d 822, 826-27 (S.D. 1985) (stating that "we have held that in the absence of an express statutory waiver, the doctrine of sovereign immunity expressed in our constitution will not be abrogated").

[¶34.]     Title 21 of the South Dakota Codified Laws governs South Dakota's judicial remedies. Within Title 21, SDCL chapter 21-35 addresses condemnation under the power of eminent domain. SDCL 21-35-23, entitled "[a]llowance of expenses where judgment greatly exceeds offer," provides:

> If the amount of compensation awarded to the defendant by final judgment in proceedings pursuant to this chapter is twenty percent greater than the plaintiff's final offer which shall be filed with the court having jurisdiction over the action at the time trial is commenced, and if that total award exceeds seven hundred dollars, the court shall, in addition to such taxable

costs as are allowed by law, allow reasonable attorney fees and compensation for not more than two expert witnesses, all as determined by the court.

[¶35.] In this case, the parties did not enter into an agreement regarding attorney fees. Further, SDCL 21-35-23 does not expressly authorize awards of attorney fees in inverse condemnation cases. The Ruperts invite this Court to follow other courts that have awarded attorney fees in inverse condemnation cases. However, we decline to do so for several reasons.

[¶36.] First, the language of SDCL 21-35-23 expressly limits its application to "proceedings pursuant to this chapter[,]" a chapter that deals with formal condemnation proceedings commenced by those vested with the power of eminent domain. *See* SDCL 21-35-1. Next, in 1966 this Court explicitly recognized an individual's right to bring an inverse condemnation action and established the procedure for doing so. *See Hurley v. State (Hurley II)*, 82 S.D. 156, 167-70, 143 N.W.2d 722, 728-29 (1966). SDCL 21-35-23 was not passed until 17 years later in 1983, yet the Legislature failed to incorporate the term "inverse condemnation" into the statute.

[¶37.] Furthermore, this Court has stated that the general purpose of SDCL 21-35-23 is "to encourage fair offers from a condemnor; if the final offer is found to be unfair based upon a comparison with a jury's verdict, the condemnor will also have to pay attorneys' fees and expert witness fees." *State ex rel. Dep't of Transp. v. Clark*, 2011 S.D. 20, ¶ 12, 798 N.W.2d 160, 165. While the purpose of SDCL 21-35-23 may be logical in the context of condemnation cases, this purpose does not appear to be logical in the context of inverse condemnation cases. In condemnation cases, the governmental entity essentially admits that a taking will occur because it

institutes the formal condemnation proceedings to do so. In contrast, in inverse condemnation cases, the governmental entity may dispute whether or not a taking or damaging of private property has even occurred. A review of our cases involving inverse condemnation claims establishes that governmental entities consistently utilize such a defense when being sued for damages. *See Hall*, 2011 S.D. 70, 806 N.W.2d 217; *Benson*, 2006 S.D. 8, 710 N.W.2d 131; *Krier*, 2006 S.D. 10, 709 N.W.2d 841; *Hurley II*, 82 S.D. 156, 143 N.W.2d 722; *Searle*, 10 S.D. 312, 73 N.W. 101. As a result, mandating that courts award attorney fees in inverse condemnation cases if the conditions of SDCL 21-35-23 are met may discourage governmental entities from contesting potentially invalid claims. It is logical that the Legislature did not expressly make SDCL 21-35-23 applicable to inverse condemnation proceedings because of this distinction.

[¶38.]       Therefore, we reaffirm our prior rulings establishing that attorney fees may not be awarded pursuant to a statute unless the statute expressly authorizes the award of attorney fees in such circumstances. Although we note that condemnation and inverse condemnation share some similarities, we will not apply the terms interchangeably for purposes of awarding attorney fees under SDCL 21-35-23 without express authority from the Legislature. As a result, because SDCL 21-35-23 does not expressly authorize an award of attorney fees in inverse condemnation cases, the trial court did not err in denying the Ruperts' request for attorney fees.

[¶39.]       **4.       Whether the trial court erred in granting summary judgment in favor of the City on the Ruperts' negligence and trespass claims.**

[¶40.]     The Ruperts filed a notice of review as to whether the trial court erred in granting summary judgment in favor of the City on the Ruperts' negligence[8] and trespass claims.  Along with reviewing this issue, the City requests that this Court determine the extent to which the City is protected from these claims by sovereign immunity (which was the subject of the City's initial motion for summary judgment which was denied by the trial court).

[¶41.]     In considering the causes of action available to a landowner whose land has been taken or damaged, the general rule followed by most courts is that if there is a statute that provides an adequate remedy for obtaining "just compensation," the statutory remedy is exclusive.  *See* 6A Nichols on Eminent Domain § 28.02[6][a][iii] (rev. 3d ed. 2002) (stating that "even in the absence of a statutory declaration of exclusiveness, where the statute provides a definite and adequate remedy, the statutory remedy is deemed exclusive"); *Kaukauna Water-Power Co. v. Green Bay & M. Canal Co.*, 142 U.S. 254, 280, 12 S. Ct. 173, 180, 35 L. Ed. 1004 (1891) (stating that "[w]here a statute for the condemnation of lands provides a definite and complete remedy for obtaining compensation, this remedy is exclusive; the common-law remedy or proceeding is superseded by the statute, and

8.     In the Ruperts' brief, the Ruperts request review of the trial court's grant of summary judgment in favor of the City on the Ruperts' *nuisance* and trespass claims.  However, the Ruperts did not plead nuisance in their complaint.  Instead, they only sued on theories of inverse condemnation, negligence, and trespass.  Further, in its order, the trial court granted summary judgment on the Ruperts' negligence and trespass claims.  Therefore, we do not address the Ruperts' claim that the trial court "erred in granting summary judgment on their *nuisance* claim."

the owner must pursue the course pointed out by it");[9] *Elec. Short Line Terminal Co. v. City of Minneapolis*, 64 N.W.2d 149, 152 (Minn. 1954) (footnote omitted) (stating that if a statute "prescribes a definite and adequate remedy for the enforcement of the constitutional right to consequential damages, the statutory remedy is exclusive in the absence of an expressed legislative intent to the contrary"); *Ashley Park Charlotte Assocs. v. City of Charlotte*, 827 F. Supp. 1223, 1225-26 (W.D.N.C. 1993) (granting summary judgment as to plaintiff's "state, common-law claims for nuisance, trespass, and negligence[,]" based on precedent establishing that the state's inverse condemnation provision "provided the landowner['s] only remedy for alleged damage in the nature of a 'taking'"); 6 Nichols on Eminent Domain § 24.06[5][a] (rev. 3d ed. 2002) (stating that when "the statute which authorizes the taking provides an adequate process which may be instituted by the owner of the property for determining and recovering compensation or damages, the general rule regarding remedies is that the statutory remedy is

---

9. At approximately the same time as *Kaukauana Water-Power Company* was decided, the South Dakota Constitutional Conventions occurred. A debate took place as to whether a landowner should be entitled to compensation for damage to his or her property as well as for an outright taking. The subject of exclusivity of remedy arose within the context of the "damage" provision and the time for payment of compensation. One delegate declared:

> I tell you that is a very different thing to going out on a farm and setting out trees, placing your buildings, your house and barns, and here comes a railroad along, and the first thing you know the line is surveyed right between your house and your barn; *of course you have no other redress. . . .*

No other delegate contested this view of exclusivity of remedy.

1 *1885 Dakota Constitutional Convention*, 336 (Doane Robinson ed., Huronite Printing Co. 1907) (emphasis added).

exclusive and the owner cannot enforce the payment of compensation or damages in any other form of action"). Alternatively, subject to sovereign immunity limitations, "[i]f the statutory remedy is inadequate, the owner may pursue common-law relief." 6A Nichols, *supra*, § 28.02[6][a][iii].

[¶42.] The rationale for the general rule that the remedy provided by statute is exclusive is that "there is no action at common law which the owner can invoke." 6 Nichols, *supra* ¶ 41, § 24.06[5][a]. "That which the law authorizes and which is an exercise of public rights acquired in a lawful and constitutional manner cannot be made the basis of an action of trespass or of any other action sounding in tort." *Id.* Notably, even in the absence of a specific statutory remedy, many courts have used this same rationale in determining that an inverse condemnation action to obtain "just compensation" is a landowner's sole remedy when a governmental entity takes or damages land pursuant to its powers of eminent domain. *See Tuffley v. City of Syracuse*, 442 N.Y.S.2d 326, 330 (N.Y. App. Div. 1981) (stating that "[i]nverse condemnation, rather than trespass, is the appropriate theory for granting damages to an injured landowner where the trespasser is cloaked with the power of eminent domain"); *Jacobson v. N.D. Dep't of State Highways*, 278 N.W. 652, 653 (N.D. 1938) (indicating that "the State or a municipality, in taking private property for public use, acts in its sovereign capacity, and not as a trespasser" and that "[w]hat is recovered is 'compensation,' . . . [i]t is not damages in the strict sense of the word"); *Great N. Ry. Co. v. State*, 173 P. 40, 42 (Wash. 1918) (stating that "[i]f the state or its agent, in the prosecution of a public work, takes no more than is necessary, and prosecutes its work without negligence, it is neither a trespasser nor a tort-feasor").

*See also Coates v. United States*, 93 F. Supp. 637 (Ct. Cl. 1950); *Bacich v. Bd. of Control*, 144 P.2d 818 (Cal. 1943); *City of Hazard v. Eversole*, 35 S.W.2d 313 (Ky. 1931); *Turner v. Mo. Pac. Ry. Co.*, 109 S.W. 101 (Mo. Ct. App. 1908); *Sarnelli v. City of New York*, 681 N.Y.S.2d 578 (N.Y. App. Div. 1998); *Eller v. Bd. of Educ.*, 89 S.E.2d 144 (N.C. 1955); *Moore v. Clark*, 70 S.E.2d 182 (N.C. 1952); *City of Oklahoma City v. Daly*, 316 P.2d 129 (Okla. 1957); *State v. Malone*, 168 S.W.2d 292 (Tex. Civ. App. 1943); *Cronin v. Janesville Traction Co.*, 158 N.W. 254 (Wis. 1916).

[¶43.]     South Dakota does not have specific statutes regarding inverse condemnation.  However, inverse condemnation actions have been explicitly recognized in South Dakota through case law.[10]  An individual's right to bring an inverse condemnation action stems from Article VI, § 13 of the South Dakota Constitution because Article VI, § 13 essentially abrogates sovereign immunity. The abrogation of a governmental entity's sovereign immunity in cases involving a taking or damaging of private property is so fundamental that it is not found in statute, but rather in our Bill of Rights in the Constitution.  *See Benson*, 2006 S.D. 8, ¶ 14, 710 N.W.2d at 139.  Our Constitution allows a property owner to file suit to

---

10.     In *Hurley II*, this Court concluded that Art. VI, § 13 of the South Dakota Constitution was self-executing and thus needed no statutory procedure to invoke it.  82 S.D. at 169, 143 N.W.2d at 729.  Pursuant to SDCL 1-1-23, both the South Dakota Constitution and South Dakota's statutes constitute an expression of sovereign will.  As the Constitution is the "mother law," any statutory framework must conform to it and not vice versa.  *Poppen v. Walker*, 520 N.W.2d 238, 242 (S.D. 1994), *superseded by constitutional amendment*, November 8, 1994, amendment to S.D. Const. art. III, § 25, *as recognized in Brendtro v. Nelson*, 2006 S.D. 71, 720 N.W.2d 670.  Thus, after *Hurley II*, no statutory framework was necessary to do what had already been done through the Constitution.

secure "just compensation" for a taking or damaging of his or her property if the public entity does not institute formal proceedings to take or damage the property. No such similar abrogation is found for the torts of negligence and trespass. Because the landowner is already guaranteed "just compensation" from the governmental entity under Article VI, § 13, when there has been a taking or damaging of property by a governmental entity, he or she is entitled to no more.

[¶44.]     In this case, the City had both the authority to maintain the roads and the authority to damage the Ruperts' property.[11]  In concluding that the City's actions constituted a "damaging" of the Ruperts' property under Article VI, § 13, of the South Dakota Constitution, the trial court established that the City validly exercised its authority.  Thus, the City's actions cannot be deemed "tortious" or in violation of any "duty" that is necessary to support a tort.  As a result, the Ruperts are not entitled to recover for the City's damaging of their property under theories of trespass or negligence.  Instead, the Ruperts are limited to recovery of "just compensation" pursuant to Article VI, § 13, of the South Dakota Constitution.

## CONCLUSION

[¶45.]     The evidence supports the trial court's determination that the damage to the Ruperts' property was unique and was not a kind of damage suffered by the

---

11.    South Dakota law gives municipalities the authority to take or damage property.  *See* S.D. Const. art. VI, § 13; S.D. Const. art. XVII, § 18; SDCL 9-12-1 (providing that "[e]very municipality shall have power . . . (2) [t]o acquire by lease, purchase, gift, condemnation, or other lawful means and hold in its corporate name or use and control as provided by law both real and personal property and easements and rights of way within or without the corporate limits for all purposes authorized by law or necessary to the exercise of any power granted").  Additionally, under South Dakota law, municipalities have the authority to maintain streets.  *See* SDCL 9-30-2.

general public as a whole.  Thus, the trial court did not err in granting summary judgment in favor of the Ruperts on their inverse condemnation claim.  However, the measure of damages used at trial for purposes of calculating the Ruperts' award of "just compensation" was erroneous.  Therefore, we reverse and remand for a new trial on damages in a manner consistent with this opinion.  Next, the trial court properly denied the Ruperts' request for attorney fees, as SDCL 21-35-23 does not apply to inverse condemnation actions.  As a result, we affirm on this issue.  Finally, because the Ruperts established the City's liability as to their claim for inverse condemnation, the jury's determination of the award of "just compensation" was the Ruperts' exclusive remedy for the City's damaging of their property.  As a result, the trial court's grant of summary judgment in favor of the City on the Ruperts' claims of negligence and trespass does not constitute reversible error in this case.

[¶46.]     ZINTER, SEVERSON, and WILBUR, Justices, and HOFFMAN, Circuit Court Judge, concur.

[¶47.]     HOFFMAN, Circuit Court Judge, sitting for KONENKAMP, Justice, disqualified.